AF Approval __GN__                                     Chief Approval JKR

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                           CASE NO. 8:21-cr-68-TPB-AAS

REYNALDO GARZA

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Karin Hoppmann, Acting United States Attorney for the Middle District of Florida,

and the defendant, Reynaldo Garza, and the attorney for the defendant, Ben

Stechschulte, mutually agree as follows:

### A.   Particularized Terms

1.   Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

Indictment. Count One charges the defendant with conspiracy to distribute and

possess with intent to distribute five kilograms grams or more of cocaine, a Schedule

II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii).

2.   Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of

imprisonment of ten years, a maximum term of imprisonment of life, a fine of up to

$10,000,000, a term of supervised release of at least 5 years, and a special assessment

of $100. With respect to certain offenses, the Court shall order the defendant to make

Defendant's Initials _RG_

restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First:    That two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute or possess with intent to distribute cocaine;

Second:    The defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third:    The object of the unlawful plan was to distribute or possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine.

4.    *Alleyne v. United States and Apprendi v. New Jersey*

Under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), a minimum sentence of ten years' imprisonment and a maximum sentence of life imprisonment may be imposed because the following facts have been admitted by the defendant and are established by this plea of guilty:

The defendant was part of a conspiracy, the object of which was to distribute and possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine.

Defendant's Initials _RG_    2

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely

Defendant's Initials _RG_                    3

with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

Defendant's Initials R G                4

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant's Initials _R̂ ᓇ_                5

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

B.   **Standard Terms and Conditions**

1.   **Restitution, Special Assessment and Fine**

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as

Defendant's Initials RG                6

to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100.00, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials R G       7

3.     <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.     <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.     <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.

Defendant's Initials <u>RG</u>          8

The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or

Defendant's Initials _R G_                    9

defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _R G_                 10

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that

Defendant's Initials _RG_                    11

defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

<u>FACTS</u>

From an unknown date and continuing through on or about August 18, 2020, the defendant, Reynaldo GARZA, was part of a conspiracy to distribute and

Defendant's Initials _RG_                    12

possess with intent to distribute five kilograms or more of cocaine in the Middle District of Florida.

Beginning on or about August 17, 2020, codefendant Jose Alejandro Garcia-Valenzuela was in contact with an undercover detective (UC) about transporting eleven kilograms of cocaine to the Middle District of Florida. Specifically, it was part of the conspiracy that the conspirators, including GARZA, transported eleven packages of which one package contained a kilogram of cocaine and the other ten packages contained cutting agents to create eleven kilograms of a mixture and substance containing cocaine. The following are excerpts of the conversations between Garcia-Valenzuela and the UC:

First Call

| GARCIA: | Hello. Oh, I just wanted to let you know that around 4:00 in the morning I'll be arriving in Brandon. I'm coming from up there…so, I'm bring white and…white and green. |
|---|---|
| UC: | Okay. |
| GARCIA: | Almost, almost. I'm already in Georgia. But, I had to go over there, far. |
| UC: | Oh, to Texas? |
| GARCIA: | Yes…Just because, how can I say it? Because they gave me, they dropped me 11, dude. Whole. |
| UC: | They took 11? |
| GARCIA: | No, they dropped me 11, I mean, they gave me 11. |

Defendant's Initials _____          13

| UC: | Onions[1] or…or…? |
|---|---|
| GARCIA: | No, no, no, no. Whole ones, bricks. |
| UC: | Whole ones? Okay. |
| GARCIA: | If you want, if you want onions…so, they gave to me for, they gave it to me…what I want is to move it fast to gain more trust with the ones from up there…So, I'm going to give you the onions at 1,000 for you. |

\*          \*          \*

| UC: | You're talking about the white one. |
|---|---|
| GARCIA: | Yes, yes, yes. I am. |
| UC: | The white one. But the white that I grabbed before or the white, the the other?[2] |
| GARCIA: | No, no, hit. |
| UC: | Hit, okay. And you have 11 whole ones right now? |
| GARCIA: | Yes, yes, if you want them. If you want the whole one for twenty-six ($26,000). |
| UC: | For one? |
| GARCIA: | Yes. I'm telling you I, I want, now everyone to come and buy from me because, the fastest I can go back up there again. I'm going to be coming back and forth. |

\*          \*          \*

| GARCIA: | So, I don't, I'm not doing it to become rich, like everyone else. That let it drop in around 30 |
|---|---|

---

[1] An "onion" is often coded language for an ounce.
[2] In this portion of the conversation, the UC was referring to fentanyl as "the white that I grabbed before…."

Defendant's Initials _RG_          14

|        | something, you understand...40. So, the soonest I finish the work, I'll look better with the ones from up there. |
|--------|--------|
| UC: | Alright, let me talk...let me talk and tell them that you have 11 whole ones right now, because maybe they'll want. To see if he wants them or not. I'll let you know. |
| GARCIA: | The price is charming. |

In this conversation, Garcia-Valenzuela was informing the UC that he was bringing eleven "whole ones" of cocaine, meaning eleven kilograms. The price of an entire kilogram would be $26,000.

Second Call

| UC: | Okay. Let's see, do you think you can...if I want 2 whole ones. How much do you think you can give them to me for? |
|--------|--------|
| GARCIA: | 25 each one, it's the minimum. |
| UC: | 25. |
| GARCIA: | It's the most I can lower them. |
| UC: | You have around 11, right? |
| GARCIA: | Yes, I have 11, but I would like you to come seem them, you know? So you can, you know? I don't like, I don't want, how can I say it? I don't want the client not to be satisfied, that's why I'm telling you that you can come see them. I mean, it's good quality and all but I can't open them until I get there, you understand. |

In the second call, Garcia-Valenzuela and the UC continue to talk about the price of a kilogram of cocaine.

Defendant's Initials _RG_                    15

Beginning on the night of August 17, 2020, agents planned an enforcement action to stop Garcia-Valenzuela and any coconspirators before the cocaine arrived in the Middle District of Florida for distribution. At about 2:30 a.m. on August 18, 2020, the cellphone pings on Garcia-Valenzuela's phone showed it to be traveling west on I-4. The vehicle was located east of Plant City at about 4:10 a.m. and Plant City Police Department officers executed a traffic stop on Garcia-Valenzuela.

Garcia-Valenzuela was traveling as part of a convoy that included GARZA, who was in a Chevy Spark. GARZA pulled off the highway and went to a nearby Wawa gas station. There, a Plant City Police Department marked unit approached GARZA. It was determined that he was driving with a suspended license and he was taken into custody.

GARZA gave consent to search his vehicle. Nothing was found and GARZA said he had traveled to Maryland with Garcia-Valenzuela. There, he saw a man known only as "the Mexican" remove a kilogram of cocaine from a box and look for a hiding spot under the vehicle.

When agents told GARZA that his description of events did not make sense and he was going to end up being the only person to get in trouble for this incident, GARZA revealed on Google Maps the approximate location of where he hid the narcotics at the gas station. At about 9:12 a.m. on August 18, agents recovered eleven vacuum-sealed bags of suspected cocaine and two pounds of marijuana. Subsequent lab testing showed that one of the packages contained 1.015

Defendant's Initials _R G_          16

kilograms of cocaine and the remaining packages contained benzocaine and caffeine, cutting agents to add to pure cocaine. The objective of the conspiracy was to create a mixture and substance of approximately eleven kilograms of cocaine.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea. and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 27TH day of October, 2021.

KARIN HOPPMANN
Acting United States Attorney

Reynaldo Garza
Defendant

Daniel M. Baeza
Assistant United States Attorney

Ben Stechschulte
Attorney for Defendant

Joseph K. Ruddy
Assistant United States Attorney
Chief, Transnational Organized Crimes

17